1    STEVEN T. GUBNER - Bar No. 156593
LARRY W. GABRIEL - Bar No. 68329
2    REAGAN E. BOYCE - Bar No. 248064
EZRA BRUTZKUS GUBNER LLP
3    21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
4    Telephone:  (818) 827-9000
Facsimile:   (818) 827-9099
5    Email:      sgubner@ebg-law.com
             lgabriel@ebg-law.com
6             rboyce@ebg-law.com

7    Attorneys for Howard Grobstein,
Liquidating Trustee for the New Meatco Liquidating Trust

8

**UNITED STATES BANKRUPTCY COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

**LOS ANGELES DIVISION**

11

| | |
|---|---|
| In re | Case No. 2:13-bk-22155-DS |
| NEW MEATCO PROVISIONS, LLC, | CHAPTER 11 |
| Debtor, | Adversary Case No. _____ |
| _____ | **COMPLAINT** |
| HOWARD GROBSTEIN, LIQUIDATING TRUSTEE FOR THE NEW MEATCO LIQUIDATING TRUST, | **1) TO AVOID FRAUDULENT TRANSFER (ACTUAL INTENT);** |
| Plaintiff | **2) TO AVOID FRAUDULENT TRANSFER (CONSTRUCTIVE FRAUD)** |
| v. | **3) TO RECOVER FRAUDULENT TRANSFERS;** |
| MORAD HAROUNI, an individual;  THE AVISAR FAMILY TRUST, by and through its trustees, EYTAN AVISAR, an individual, and SUSAN AVISAR, an individual;  MEATCO PROVISIONS, INC. a California corporation; ROBERT A. FOWLER, an individual; ALEXANDER P. COLEMAN, an individual; RICK MAZUR, an individual;  JOSHUA GOLDBERG, an individual;  AMANT DEWAN, an individual;  MEATCO ACQUISITION COMPANY, LLC, a Delaware limited liability company; PROSPECT CAPITAL CORPORATION, a Maryland corporation; CALME HOLDINGS, INC., a Delaware corporation;  DAVID MOSZER, an individual; JOHN KNEISLEY, an individual;  and DOES 1 through 10, inclusive, | **4) BREACH OF FIDUCIARY DUTY;** **5) BREACH OF CONTRACT;** **6) NEGLIGENCE;** **7) GROSS NEGLIGENCE;** **8) CONVERSION** **DEMAND FOR JURY TRIAL** [11 U.S.C. §§544, 550; Cal. *Civ. Code* §3439; Fed.R.Bankr.P. 7009; Fed.R.Civ.P. 9] **Initial Status Conference** **Date:  TBD** **Time:  TBD** **Place:**  Courtroom 1339 |
| Defendants. | United States Bankruptcy Court 255 E. Temple Street Los Angeles, CA 90012 |

1

Plaintiff, Howard Grobstein, the duly authorized and acting, liquidating trustee ("***Trustee***" or "***Plaintiff***") for the New Meatco Liquidating Trust, (the "***Trust***"), as the successor in interest to the rights and claims of Debtor and Debtor-In-Possession, New Meatco Provisions, LLC ( "***Debtor***"), alleges as follows:

## I.    NATURE OF PROCEEDING

1.    By this action the Liquidating Trustee seeks to avoid and recover the approximate $30 million Defendants Harouni and the Avisar Family Trust obtained from a purported leverage buy out they engineered in April 2011. The Trustee also asserts claims against Harouni for breach of his fiduciary obligations he owed to the Debtor as an officer and director of the Debtor, and for his breach of contractual confidentiality and non-compete obligations he owed to the Debtor, and for conversion as to the Debtor's corporate assets.

2.    This action also seeks monetary damages for the damages caused by the other Defendants for their breach of fiduciary duty to Debtor and its creditors for failing to act in a reasonable business fashion to preserve the assets of the Debtor for the benefit of the Debtor and its creditors prior to filing for bankruptcy and at the time the Debtor was insolvent.

## II.    JURISDICTION AND VENUE

3.    This Court has jurisdiction over this adversary proceeding because the claims for relief set forth herein are core matters pursuant to 28 U.S.C. § 1334 and 28 U.S.C. §§ 157(a), (b)(2)(A), (b)(2)(H) and (b)(2)(O).

4.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 151, the *Local Bankruptcy Rules* of the United States Bankruptcy Court for the Central District of California ("***Bankruptcy Court***"), and General Order Number 13-05 of the United States District Court for the Central District of California.

5.    In addition, this proceeding is a civil proceeding arising in or related to a case under Title 11 of the *United States Code* ("***Bankruptcy Code***"). This adversary proceeding arises in or relates to the bankruptcy case *In re New Meatco Provisions, LLC* case number 2:13-bk-22155-DS ("***Meatco Bankruptcy***").

6.    Plaintiff has standing to bring this adversary proceeding pursuant to 11 U.S.C. § 323

and the Court Approved *Third Amended Joint Chapter 11 Plan of the Official Committee of Unsecured Creditors and New Meatco Provisions, LLC*, ("**Plan**") approved by the Bankruptcy Court on August 26, 2014, and the powers and authority granted to Plaintiff under the concurrent Liquidating Trust Agreement executed pursuant to the Plan on August 27, 2014. Howard Grobstein was appointed the Liquidating Trustee on August 27, 2014, pursuant to the Plan and Liquidating Trust Agreement and continues to serve in that capacity. Because the Trustee was not appointed as Liquidating Trustee until after the occurrence of the facts alleged in this Complaint, he has no personal knowledge of such facts. Accordingly, the Trustee alleges all such facts on information and belief based on a review of business records of the Debtor and other records obtained.

### III.    THE PARTIES

### A.    Plaintiff.

7.      Plaintiff, Howard Grobstein, is the duly authorized and acting Liquidating Trustee for the New Meatco Liquidating Trust, the successor in interest to the assets of the Debtor and Debtor-In-Possession, New Meatco Provisions, LLC, United States Bankruptcy Court, Central District of California, Los Angeles Division, Case No. 2:13-bk-22155-PC.    The Trustee acts solely in his capacity as the Liquidating Trustee in bringing this action.

### B.    Defendants.

8.      Defendant Morad Harouni, ("**Harouni**"), is a resident of Los Angeles County, State of California.

9.      Defendant The Avisar Family Trust (the "**Avisar Trust**") is a family trust established under and pursuant to California law.

10.      Defendant Eytan Avisar is sued herein in his capacity as a trustee for the Avisar Trust ("**E.Avisar**"). At all times relevant herein, E.Avisar resided in and/or conducted business in the County of Los Angeles, State of California.

11.      Defendant Susan Avisar, ("**S.Avisar**" and jointly with **E.Avisar**, the "**Avisar Trustees**") is sued herein in her capacity as trustee for the Avisar Trust. At all times relevant herein **S.Avisar** resided in, and/or conducted business in the County of Los Angeles, State of California.

12.      Defendant Meatco Provisions, Inc., ("**MPI**") was, at all times relevant herein, a

California corporation conducting business in the State of California, within the jurisdiction of this Court. MPI is solely owned by Defendant Harouni.

13.     Defendant Meatco Acquisition Company, LLC, ("**MAC**") is a Delaware limited liability company and, at all times relevant herein, was conducting business in the State of California within the jurisdiction of this Court. Upon information and belief, MAC is a wholly owned subsidiary of Annex Capital Advisors, LLC.

14.     Defendant Robert A. Fowler, an individual ("**Fowler**"), at all times relevant herein was conducting business in the State of California within the jurisdiction of this Court.

15.     Defendant Alexander P. Coleman, an individual ("**Coleman**"), at all times relevant herein was a resident of and/or was conducting business in the State of California within the jurisdiction of this Court.

16.     Defendant Rick Mazer, an individual ("**Mazer**"), at all times relevant herein was a resident of and/or was conducting business in the State of California within the jurisdiction of this Court.

17.     Defendant Joshua Goldberg, an individual ("**Goldberg**"), at all times relevant herein was a resident of and/or was conducting business in the State of California within the jurisdiction of this Court.

18.     Defendant Amant Dewan, an individual ("**Dewan**"), at all times relevant herein was a resident of and/or was conducting business in the State of California within the jurisdiction of this Court.

19.     Defendant Prospect Capital Corporation, Inc. ("**Prospect**") is a Maryland corporation and was, at all times relevant herein, conducting business in the State of California, within the jurisdiction of this Court.

20.     Defendant Calme Holdings, Inc. ("**Calme**") is a Delaware corporation and was, at all times relevant herein, conducting business in the State of California, within the jurisdiction of this Court.

21.     Defendant David Moszer, an individual ("**Moszer**") was, at all times relevant herein, a resident of and/or was conducting business in the State of California within the jurisdiction of this

Court.

22.     Defendant John Kneisley, an individual ("***Kneisley***") was, at all times relevant herein, a resident of and/or was conducting business in the State of California within the jurisdiction of this Court.

**C.     DOE Defendants**

23.     Plaintiff is ignorant of the true names of Defendants DOES 1 through 10 inclusive and has sued them by the foregoing fictitious names, and states that when their true names are discovered, the Complaint will be amended to include their true names.

**D.     Agency Allegations**

24.     Plaintiff is informed and believes and based thereon alleges that each of the named Defendants and DOES 1 through 10, (collectively the "***Defendants***" and each individually a "***Defendant***") are and/or were the partners, principals, servants, employees, employers, agents, representatives, subsidiaries, affiliates, joint venturers, and/or the alter-egos of each other Defendant and each Defendant was otherwise acting in concert with, aided and abetted, and acting in furtherance of a civil conspiracy with each other Defendant, in doing all things herein alleged, and was acting within the purpose and scope of their authority as such partners, principals, servants, employees, employers, agents, representatives, subsidiaries, affiliates, joint venturers, and/or the alter-ego relationship with each other Defendant, and engaged in the conduct that was authorized, ratified, approved and/or otherwise sanctioned with advanced knowledge or subsequent ratification or acquiescence by each other Defendant.

25.     Plaintiff is informed and believes, and based thereon alleges that each of the Defendants were responsible, negligently, intentionally and/or in some actionable manner, including as corporate successors liable for the acts of their predecessors, for the events referred to herein, and caused injuries and damages legally to Plaintiff, as alleged, either through each Defendants' own conduct, or through the conduct of each Defendants' agents, servants, employees, aiders and abettors, and co-conspirators, or due to the ownership, maintenance, or control of the instrumentality causing the injury to Plaintiff, or in some other actionable manner.

## IV.    STATEMENT OF FACTS APPLICABLE TO ALL CLAIMS FOR RELIEF

### A.    Background

26.    Commencing in or around 1988 and up until April 2011, Morad Harouni and the Avisar Trust each owned a 50% interest in MPI, an importer and distributor of refrigerated and frozen protein products to approximately 2,000 Hispanic grocery stores and bodegas in Southern and Central California. Its products included meat, poultry, and seafood, with its seafood offerings being marketed under the name King Seafood. MPI operated out of a 191,270 square foot, leased facility located just south of downtown Los Angeles.

### B.    The Financing Scheme and Acquisition of the Debtor by MAC

27.    On or about April 11, 2011, Harouni and the Avisar Trustees formed a California limited liability company, New Meatco Provisions, LLC ("Debtor") with MPI as the Debtor's sole member. Thereafter Harouni and the Avisar Trustees caused MPI to transfer all of MPI's assets to the Debtor.  As a result, MPI's only asset was its 100% membership in the Debtor.  At the time of the transfer, New Meatco had secured indebtedness of approximately $8 million.

28.    On or about April 18, 2011, Harouni and the Avisar Trustees caused the Debtor to borrow approximately $42 million consisting of a $25 million line of credit from Wells Fargo Bank, a $3 million term loan from Wells Fargo Bank (together the "***Wells Fargo Loan***"), and a $13 million loan from Prospect ( the "***Prospect Lien Loan***") (collectively the "2011 Financing"). The 2011 Financing was secured by all of the Debtor's assets with a first lien in favor of Wells Fargo Bank, and a second subordinated lien in favor of Prospect.

29.    Also on or about Meatco Acquisition Company, LLC, (the "Purchaser") and  Harouni and the Avisar Family Trust (collectively the "Sellers") and Meatco Provisions, Inc., (Meatco) entered into an Interest Purchase Agreement  (the "IPA") pursuant to which  the proceeds from the 2011 Financing were used in part to  buy-out 100% of the Avisar Trustee's stock in MPI (approximately  $15,000,000); and to buy-out a portion, but not all of Harouni's stock holdings in MPI (approximately $15.1 million) (together the "***Stock Buy-out Transfer***"). The Avisar's sale was accomplished through a repurchase agreement between the Trust and the Debtor.  Upon information and belief, Harouni's membership interest was purportedly purchased by MAC, however the funding

1    for the purchased originated from the loan proceeds of the 2011 Financing. The balance of the funds

2    were used to retire the Debtor's secured debt obligations that existed at the time.

3        30.    As part of the foregoing transaction, MPI sold 80.1% of its interests in the Debtor to

4    MAC for $5.1 million gross, which amount was later reduced by a post-sale adjustment of

5    approximately $4.8 million, leaving MAC's equity investment in the Debtor as net $2.2 million. (the

6    "*MAC Acquisition*").  The remaining 19.9% interest in the Debtor was still held by MPI, which was

7    wholly owned by Harouni.

8        31.    The $42 million liability incurred by Debtor surpassed the total net worth of Debtor's

9    assets at the time, and therefore, rendered the Debtor insolvent. The Debtor did not receive a

10    reasonably equivalent value for the $42 million in debt obligations it incurred in order to be able to

11    pay Harouni and Avisar Trust  $30.1 million for their MPI stock, as evidenced by the net $2.2

12    million purchase price that MAC paid for its 80.1% interest in the Debtor as heretofore set forth.

13        32.    The MAC Acquisition agreements entered into by and between MAC, MPI, and

14    Debtor included certain confidentiality provisions which required the sellers of the company to

15    maintain the confidential information of Debtor. Specifically, section 12.3(b) of the Acqusiitiopn

16    Agreement provides:

> "Each Seller and the Company further covenant and agree that from and after the
> Closing Date, not to disclose or use, in any manner, any confidential information
> related to the Company or the Business..."

19        33.    In addition, in or around April, 2011, MAC, MPI and the Debtor entered into an

20    Operating  Agreement  which  likewise  contained  confidentiality  provisions.  The  Operating

21    Agreement provides:

> "Except with the prior written consent of the Company and as otherwise required by
> law or regulatory authority, each Member shall, and shall use all reasonable efforts to
> cause each of its representatives to (a) hold in strict confidence all confidential,
> proprietary or other non-public information or trade secrets relating to the Company
> or its Subsidiaries or their respective assets or operations.

### C. Post-Acquisition Management of the Debtor

26        34.    Following MAC's acquisition of the Debtor, Defendant Richard L. Mazer was

27    appointed the Chairman of the Board of the Debtor and Defendants Coleman, Fowler, Dewan, and

1   Goldberg were appointed directors along with Harouni. At the same time, Defendants Coleman,

2   Fowler, Goldberg, and Dewan were all appointed to MAC's board of directors.

3          35.    At the same time as the above described transactions, in April 2011, Harouni was

4   employed as the President and CEO of the Debtor. At the same time, Harouni and the Debtor entered

5   into a written employment agreement, (the "***Harouni Employment Contract***") setting forth the

6   duties and obligations of Harouni which included non-compete and confidentiality provisions. While

7   employed by Debtor, Harouni owned minority equity interests in third parties, Monarch Trading

8   Company, LLC. ("***Monarch***") and Lawrence Wholesale ("***Lawrence***") both of whom were and are

9   engaged in the same business of the Debtor and were competitors of the Debtor.

10         36.    Following MAC's acquisition of Debtor, Fowler accused Harouni of overstating the

11  value of Debtor with respect to the MAC Acquisition, including failure to identify bad debt, on-

12  going business transactions with vendors who were in breach of credit agreements, and buying

13  practices that resulted in large inventory write-offs.

14         **D.    Events Leading Up to the Chapter 11 Filing**

15         37.    By April 2012, the Debtor was unable to meet certain covenants under its secured

16  loan agreements. Since the Stock Buy-out Transfer, the Debtor had entered into numerous

17  amendments and forbearance agreements with Wells Fargo and Prospect in an effort to address its

18  liquidity and business concerns. Performance, however, continued to decline, and throughout

19  October and November of 2012 the Debtor, Wells Fargo, and Prospect, recommenced workout

20  discussions.

21         38.    Effective April 23, 2012, Prospect and Harouni entered into a *Loan Transfer*

22  *Supplement Agreement* whereby Harouni acquired from Prospect a portion of its rights under the

23  Prospect Lien Loan in the assigned principal amount of $1,200,000.00 ("***Harouni Lien Loan***").

24  Concurrently, Calme, as the agent for Prospect, and Harouni entered into a *Subordination Agreement*

25  pursuant to which Harouni subordinated his rights to receive any payments on the Harouni Lien

26  Loan until the Prospect Lien Loan was paid in full**.**

27         39.    Upon information and belief, in or around 2012, Harouni began diverting inventory,

28  employees, and data from the Debtor for his own benefit to Monarch, which was also one of the

8

Debtor's largest creditors. The Debtor's books and records also reflect $38,500.00 was owed to another Harouni related company, Lawrence.

40.    In or about November 2012, the Debtor defaulted on its secured loan obligations to Prospect by failing to meet certain covenants, including failing to satisfy its minimum required EBITDA. Around this same time, the Debtor experienced a large decline in its inventory.

41.    On November 9, 2012, Prospects loan administrator, Calme issued a *Notice of Exercise of Certain Rights Pursuant to Loan Agreement and Collateral Agreements* (the "***Default and Voting Rights Notice***") pursuant to which the Debtor was given notice of events of default under the Prospect Lien Loan.  As a result thereof Calme caused to be transferred into its name (for the benefit of Prospect) the pledged equity interests owned by MPI and MAC. All of the rights of MPI and MAC to exercise voting rights under the Debtor's organizational documents were terminated, and these rights were then vested in Calme.

42.    Effective that same date, November 9, 2012, pursuant to various written consents all then current members of the Board were removed and replaced by Defendants David Moszer and John Kneisley, who were officers of Calme.

43.    In November 2012, Moser and Kneisley retained an outside consultant, Scouler and Company, LLC, ("***Scouler***") to assess Debtor's financial condition, viability, and alternatives. In December 2012, Scouler reported that the Debtor was experiencing extensive operational issues impacting the company's viability, all of which can be attributable to Harouni's management, including but not limited to:

a.    ***Ineffective Management***. The company's growth was accompanied by increasing layers of complexity, and obtaining the support of more seasoned management was one of the factors that lead the Debtor to enter into the MAC Acquisition.

b.    ***Inefficient Warehousing***. Prior to its acquisition, the Debtor operated out of multiple warehouses. In August 2012 the Debtor consolidated its operations into a single, warehouse facility that increased the Debtor's rent by $400,000 annually.

c.    ***Ineffective Inventory Controls***. The Debtor's key warehousing, inventory control, and distribution systems were ineffective, poorly organized, inefficient, and gave the Debtor

no visibility into, or control over, its inventory. Notwithstanding its new warehouse, these inefficiencies resulted in massive inventory shortfalls, including a $2 million inventory write off in 2012.

d.    ***Inappropriate Inventory Control***. Although the Debtor began soliciting proposals to implement a state-of-the-art enterprise reporting system that would provide it with visibility into and control over its inventory, this project was never completed.

e.    ***Spiraling Cost Structure***. Following the MAC Acquisition, salaries increased by $300,000 annually. Workers' compensation premiums escalated by $600,000 annually, as a result of the Debtor's correction of certain errors in its reporting. The cost of equipment leases increased by $800,000 annually as the Debtor acquired additional equipment in connection with the move to its new warehouse, and fuel costs jumped by $500,000 annually as the new equipment was moved into production. In addition, SG&A increased by $500,000 annually. In total, these items added $3.1 million annually to the Debtor's operating costs. Upon information and belief, the new capital investments were made at Mazer's recommendation and with the approval of Coleman and Fowler.

44.    In January 2013, Daniel Scouler was appointed as the Debtor's Chief Restructuring Officer ("***CRO***"). Scouler initially attempted to stem the Debtor's losses while seeking a going concern sale of the business.

45.    In January 2013, Flower disclosed by email certain confidential financial information of the Debtor to one of the Debtor's competitors, Rancho Foods and Unified Grocers. The email stated simply: "For your information." Copies of the Default and Voting Rights Notice and Written Consents were attached.  Rancho Foods was a customer and competitor of the Debtor. Unified Grocers is a cooperative whose members included numerous customers of the Debtor. The Default and Voting Rights Notice and Written Consents constitute the Debtor's confidential information.

46.    At the time the emails were sent, Fowler was no longer members of the Debtor's board, but was still subject to the confidentiality agreement.   Moreover, Fowler was also one of the managing directors of Annex Capital, who was the managing member of MAC.

47.    In 2013, despite the CRO's alleged efforts to find a going concern buyer, the Debtor's business continued to decline. Immediately before the shutdown of operations, the CRO had

1  difficulty accessing certain electronic information, encountering computers that were missing or

2  whose data had been deleted, and was unable to locate several key salespeople in the Debtor's

3  seafood division. It was discovered that data files had been wiped totally clean from the computers

4  in the seafood division, that Excel spreadsheets and similar files had also been completely removed

5  from the computers.  No other division of Debtor had its computers wiped.

6      48.    Upon information and belief, the Debtor's electronic information and sales personnel

7  were later used by Harouni at Harouni's other company Monarch, which prior to the close of Debtor

8  did not operate a seafood division, but after the computer files and personnel were discovered

9  missing began operating a seafood division in direct competition with Debtor.

10      **E.    Prospect's Self-Dealing**

11      49.    In or around late February 2013, a Mexican company called Viz Cattle and/or its

12  subsidiary SuKarne ("***Viz Cattle***") expressed interest in purchasing the Debtor. Viz Cattle sent five

13  people from Mexico to Debtor's offices to review financial books and records for a week after

14  signing non-disclosure agreements. Harouni was their point of contact during this initial visit. The

15  purpose of Viz Cattle's review was due diligence for a potential purchase of the Debtor.

16      50.    A sale of Debtor to Viz Cattle would have benefited both Debtor and its creditors,

17  because the company would have been infused with additional capital and received other operational

18  support it desperately needed.

19      51.    Approximately one week after Viz Cattle completed its due diligence, the

20  representatives returned and informed Harouni that they were interested in acquiring Debtor and

21  wanted to commence communications with whoever was in control.

22      52.    Harouni informed both Scouler and Mazer on behalf of Prospect of Viz Cattle's

23  interest in purchasing Debtor. However, no one at Prospect, Calme, or even Moszer appeared

24  interested in the potential sale. Instead, Moszer and Scouler both informed Harouni that Prospect had

25  "signed an exclusivity deal with another party." Essentially, Moszer told Harouni that Prospect could

26  not talk to Viz Cattle, because Prospect was pursuing the sale of Debtor to another potential buyer.

27      53.    Plaintiff is informed and believes and thereon alleges that, contrary to their

28  representations, that Prospect made no efforts to sell Debtor to any potential buyers, at any time.

54.     Plaintiff is informed and believes and on that basis alleges that when Viz Cattle expressed interest in purchasing Debtor, Prospect was already in negotiations, or planning to enter into negotiations, to sell the Prospect Lien Loan (only the remaining portion held by Prospect) to another financial institution, and believed that a sale of Debtor, although likely in the best interest of Debtor and its creditors, would have impeded, devalued, or delayed sale of the Prospect Lien Loan.

55.     Instead of pursuing a sale of Debtor to a potential buyer, which would have been in the best interest of Debtor and its creditors, Prospect, Moszer, and Scouler instead pursued a sale of only the Prospect Lien Loan, which benefitted only Prospect.

56.     Ultimately, Prospect sold the Prospect Loan Lien to LAMCP Capital, LLC shortly before Debtor filed for bankruptcy.

**F.      Harouni Discloses The Debtor's Confidential Information**

57.     Around March 29, 2013, Seafax, a leading credit reporting and collection agency for the North American food industry, downgraded the Debtor's credit rating from "inconclusive" to "cautionary" status. Following this downgrade, the Debtor's major suppliers stopped further shipments of inventory. Without the ability to meet customer orders, the Debtor's customers rapidly turned to competitors and Debtor's sales team resigned. The Debtor was thereupon unable to continue and was forced to cease operations.

58.     The Seafax report states that it is based, at least in part, on information that Seafax learned from Harouni. The information that Seafax attributed to Harouni included information about a possible change of ownership, information about the Debtor's default with respect to the Prospect Lien Loan and the lenders' Default and Voting Rights Notice under their security agreement, and statements to the effect that the company's lenders "took over operational control of the business."

**G.      The Debtor Petitions for Bankruptcy**

59.     Shortly thereafter, on or about May 8, 2013, ("***Petition Date***") the Debtor filed for bankruptcy. At the time of filing, based on the Debtor's books and records, the book value of the Debtor's unaudited balance sheet assets totaled approximately $894,887.00. These assets consisted of $42,200.00 in cash on hand, $849,636.00 in security deposits, and about $3,000 in office equipment and furnishings.

60.    Based on the Debtor's books and records, as of the Petition Date, the Debtor's unaudited, balance sheet liabilities totaled approximately $39,404,029.00. These liabilities included approximately $3,949,885.00 in principal and accrued interests owed to Wells Fargo, $14,129,360.00 in principal and accrued interest owed on the Prospect Lien Loan (now held by LAMCP Capital, LLC), $5,000,000.00 outstanding under a promissory note in favor of Harouni, $37,310.00 in priority claims, and $16,287,474.00 in unsecured claims such as trade vendor and unsecured landlord claims.

**FIRST CLAIM FOR RELIEF**

**AVOIDANCE OF FRAUDULENT TRANSFER**

**(As against the Harouni and The Avisar Family Trust)**

**[11 U.S.C. §§ 544, 550; Cal. Civ. Code § 3439.04]**

61.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 60 of the complaint as if set forth herein in full.

62.    The $30 million Stock Buy-out Transfer made by Debtor to Harouni and Avisar Trust in or around April 18, 2011, was incurred and made with the intent to hinder, delay, or defraud the creditors of Debtor.

63.    Accordingly, the Stock Buy-out Transfer made by the Debtor to Harouni and Avisar Trust is avoidable and should be avoided as fraudulent pursuant to 11 U.S.C. § 544 and Cal. *Civ. Code* § 3439.04.

**SECOND CLAIM FOR RELIEF**

**RECOVERY OF AVOIDED FRAUDULENT TRANSFER**

**(As against the Harouni and The Avisar Family Trust only)**

**[11 U.S.C. §§ 544, 550; Cal. Civ. Code § 3439.07]**

64.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 63 of the complaint as if set forth herein in full.

65.    By reason of the foregoing, the Trustee is entitled to recover for the benefit of the Debtor's estate the $30 million Stock Buy-out Transfer from the Debtor to Harouni and Avisar Trust pursuant to 11 U.S.C. §§ 544 , 550 and Cal. *Civ. Code* § 3439.07.

**THIRD CLAIM FOR RELIEF**

**AVOIDANCE OF FRAUDULENT TRANSFER**

**(As against the Harouni and The Avisar Family Trust only)**

**[11 U.S.C. §§ 544,550; Cal. Civ. Code § 3439.04]**

66.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 60 of the complaint as if set forth herein in full.

67.    The Debtor did not receive reasonably equivalent value from Harouni and Avisar Trust in exchange for the $30 million Stock Buy-out Transfer.

68.    At the time the $30 million Stock Buy-out Transfer was made, the Debtor (i) was insolvent, or became insolvent as a result of the obligations or transfers; and/or (ii) was engaged in a business or transaction for which any remaining property of the Debtor was unreasonably small capital; (iii) intended to incur, or reasonably should have believed that it would incur, debts beyond its ability to pay as they came due; and/or (iv) made such transfer to or for the benefit of an insider.

69.    Accordingly, the $30 million Stock Buy-out Transfer made by the Debtor to Harouni and Avisar Trust is avoidable and should be avoided as fraudulent pursuant to 11 U.S.C. § 544 and Cal. *Civ. Code* § 3439.04.

**FOURTH CLAIM FOR RELIEF**

**RECOVERY OF AVOIDED FRAUDULENT TRANSFER**

**(As against the Harouni and The Avisar Family Trust only)**

**[11 U.S.C. §§ 544, 550; §3439.07]**

70.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 60 and paragraphs 66 through 69 of the complaint as if set forth herein in full.

71.    By reason of the foregoing, the Trustee is entitled to recover for the benefit of the Debtor's estate the $30 million Stock Buy-out Transfer from the Debtor to Harouni and Avisar Trust pursuant to 11 U.S.C. §§ 544, 550 and Cal. *Civ. Code* §3439.07].

///

///

///

# FIFTH CLAIM FOR RELIEF

## BREACH OF CONTRACT

### (As against MAC and DOES 1 through 5 only)

72.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 60 of the complaint as if set forth herein in full.

73.     The Operating Agreement constitutes a binding, enforceable agreement between Debtor and MAC. The provisions of the Operating Agreement are also binding and enforceable against Fowler, Coleman, Dewan, Goldberg, and DOES 1 through 5 as a result of their relationship to MAC and Debtor.

74.     Debtor performed all of its obligations under the Operating Agreement except for those performances which were excused.

75.     MAC, Fowler, Coleman, Dewan, Goldberg, and DOES 1 through 5, and each of them, breached the Operating Agreement, and in particular the Confidentiality Clause of the Operating Agreement when they, acting in concert with each other, disclosed Debtor's confidential and proprietary information to third parties, including, but not limited to Unified Grocer and Rancho Foods.

76.     Plaintiff is informed and believes and based thereon alleges that MAC, Fowler, Coleman, Dewan, Goldberg, and DOES 1 through 5, and each of them, knew of, agreed with, approved, and/or provided substantial assistance to MAC's and/or Fowler's breach of the Operating Agreement.

77.     As a direct, proximate result, of MAC, Fowler, Coleman, Dewan, Goldberg, and DOES 1 through 5's breach of the Operating Agreement, Debtor was injured in an amount to be proven at trial.

78.     The Operating Agreement provides for the payment of attorney fees in the event of suit thereon.  Accordingly, the Trustee is entitled to his reasonable attorney fees incurred in the prosecution of this action.

## SIXTH CLAIM FOR RELIEF

## BREACH OF CONTRACT

### (As against Defendant Morad Harouni only)

79.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 60 of the complaint as if set forth herein in full.

80.    Harouni entered into the Harouni Employment Contract with Debtor as part of the MAC Acquisition. The employment contract contained a non-compete clause.

81.    The Harouni Employment Contract constitutes a binding, enforceable agreement between the Debtor and Harouni.

82.    Debtor performed all of its obligations under the Harouni Employment Contract except for those performances which were excused

83.    Harouni breached his obligations owed to the Debtor under the employment agreement by, among other things:

   a.   failing to disclose his interests in competitors such as Lawrence Wholesale and other competitors of Debtor while employed by the Debtor;

   b.   transferring assets, customer accounts, and electronic data to Monarch without adequate consideration being paid to the Debtor, and in violation of his obligations to preserve the Debtor's assets and not to compete against the Debtor vis a vis its business operations.

84.    Harouni's conduct as set forth above, was and is a material breach of his contractual obligations owed to the Debtor.

85.    As a result of Harouni's breach of the Harouni Employment Contract, Debtor was injured in an amount to be proven at trial.

86.    The Employment Agreement provides for the payment of attorney fees in the event of suit thereon.    Accordingly, the Trustee is entitled to his reasonable attorney fees incurred in the prosecution of this action.

///

///

**SEVENTH CLAIM FOR RELIEF**

**BREACH OF CONTRACT**

**(As against Defendants, Morad Harouni, and DOES 6 through 10 only)**

87.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 60 of the complaint as if set forth herein in full.

88.    The Operating Agreement constitutes a binding, enforceable agreement between the Debtor and MPI. The provisions of the Operating Agreement are also binding and enforceable against Harouni as a result of his relationship to the Debtor.

89.    The Debtor performed all of its obligations under the Operating Agreement except for those performances which were excused.

90.    Harouni, and DOES 6 through 10, and each of them, breached the Operating Agreement, and in particular the Non-Compete Clause of the Operating Agreement when they, acting in concert with each other, allowed Monarch to obtain the sales staff, computer files, vendor and customer accounts and other confidential and proprietary information relating to the seafood division of Debtor.

91.    Plaintiff is informed and believes and based thereon alleges that Harouni and DOES 6 through 10, and each of them, knew of, agreed with, approved, and/or provided substantial assistance to Harouni's breach of the Operating Agreement.

92.    As a direct, proximate result of Harouni's and DOES 6 through 10's breach of the Operating Agreement, Debtor was injured in an amount to be proven at trial.

93.    The Operating Agreement provides for the payment of attorney fees in the event of suit thereon. Accordingly, the Trustee is entitled to his reasonable attorney fees incurred in the prosecution of this action.

**EIGHTH CLAIM FOR RELIEF**

**BREACH OF CONTRACT**

**(As against Defendants, Morad Harouni, and DOES 6 through 10 only)**

94.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 60 of the complaint as if set forth herein in full.

95.     The Acquisition Agreement is a binding and enforceable agreement between Debtor and MPI. The provisions of the Acquisition Agreement are also binding and enforceable against Harouni and DOES 6 through 10 as a result of their relationship to MPI and the Debtor.

96.     The Debtor performed all of its obligations under the Acquisition Agreement except for those performances which were excused.

97.     Harouni and DOES 6 through 10, and each of them, breached the Acquisition Agreement, and in particular the Non-Compete Clause of the Acquisition Agreement when they, acting in concert with each other, allowed Monarch to obtain the sales staff, computer files, vendor and customer accounts and other confidential and proprietary information relating to the seafood division of the Debtor

98.     Plaintiff is informed and believes and based thereon alleges that Harouni and DOES 6 through 10, and each of them, knew of, agreed with, approved, and/or provided substantial assistance to Harouni's breach of the Acquisition Agreement.

99.     As a direct, proximate result of Harouni's and DOES 6 through 10's breach of the Acquisition Agreement, Debtor was injured in an amount to be proven at trial.

100.     The Acquisition Agreement provides for the payment of attorney fees in the event of suit thereon.  Accordingly, the Trustee is entitled to his reasonable attorney fees incurred in the prosecution of this action.

## NINTH CLAIM FOR RELIEF

## BREACH OF FIDUCIARY DUTY

**(As against Defendants MAC, Mazer, Coleman, Fowler, Dewan, Goldberg, and Harouni only)**

101.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 60 of the complaint as if set forth herein in full.

102.     As a result of their positions as a managing member, director, and/or officer of the Debtor, MAC, Mazer, Coleman, Fowler, Dewan, Goldberg, and Harouni, and each of them, owed a fiduciary duty to Debtor.

103.     The Defendants, MAC, Mazer, Coleman, Fowler, Dewan, Goldberg, and Harouni, acting in concert with each other, and in their capacity as the managing member, officer, and/or

director of Debtor, acquired the confidential and proprietary information of Debtor.

104. The Defendants, MAC, Mazer, Coleman, Fowler, Dewan, Goldberg, and Harouni, thereafter disclosed the confidential and proprietary information of Debtor to third parties, including but not limited to, third party competitors and customers, Unified Grocer, Rancho Foods, and Seafax for the benefit of the Defendants and to the detriment of the Debtor.

105. Such disclosures of the Debtor's confidential and proprietary information by MAC, Mazer, Coleman, Fowler, Dewan, Goldberg, and Harouni, was a failure by MAC, Mazer, Coleman, Fowler, Dewan, Goldberg, and Harouni, to act as a reasonably careful managing member, officer and/or director would have acted under the same or similar circumstances.

106. As a result of such disclosures, the Debtor was harmed in an amount to be proven at trial.

107. Defendants conduct as described herein was willful, wanton and intentional, and accordingly Plaintiff is entitled to punitive damages on this claim for relief in a sum to be determined at the time of trial of this matter.

## TENTH CLAIM FOR RELIEF

## BREACH OF FIDUCIARY DUTY

### (As against Calme, Moszer, and Kneisley only)

108. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 60 of the complaint as if set forth herein in full.

109. As a result of their positions as a managing member, director, and/or officer of the Debtor, Calme, Moszer, and Kneisley, and each of them, owed a fiduciary duty to Debtor.

110. The Defendants, Calme, Moszer, and Kneisley, acting in concert with each other, and in their capacity as the managing member, officer, and/or director of Debtor failed to safeguard the confidential and proprietary information of the Debtor, and/or to take reasonable steps to ensure that the confidential and proprietary information of the Debtor was protected from disclosure to third parties.

111. Such failure to take reasonable steps to protect and safeguard the confidential and proprietary information of Debtor from disclosure to third parties was a failure by the Defendants,

Calme, Moszer, and Kneisley, to act as a reasonably careful managing member, officer and/or director would have acted under the same or similar circumstances.

112.    As a result of such failure to protect and safeguard the Debtor's confidential and proprietary information, Debtor was harmed in an amount to be proven at trial.

113.    Defendants conduct as described herein was willful, wanton and intentional, and accordingly Plaintiff is entitled to punitive damages on this claim for relief in a sum to be determined at the time of trial of this matter.

### ELEVENTH CLAIM FOR RELIEF

### BREACH OF FIDUCIARY DUTY

### (As against Defendants Calme, Moszer, and Kneisley only)

114.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 60 of the complaint as if set forth herein in full.

115.    The Defendants, Calme, Moszer, and Kneisley, assumed control of Debtor by exercise of rights under the Default and Voting Rights Notice served on MAC and Debtor on or about November 9, 2012.

116.    Despite the dire financial condition and operational problems that Debtor had suffered since the MAC Acquisition, the Defendants, Calme, Moszer, and Kneisley, refused to even consider a buy-out offer from Viz Cattle in early 2013, let alone actively market the Debtor for a going concern sale.

117.    Instead, in March 2013, the Defendants, Calme, Moszer, and Kneisley, entered into an agreement with third party LAMCP Capital, LLC, whereby Calme sold 100% of Prospect's remaining interest in Debtor, (the Prospect Lien Loan), for a significant discount.

118.    The Defendants' sale of the Prospect Lien Loan at a time when the Debtor was suffering financial difficulties to the point of preparing for bankruptcy was a failure by Calme, Moszer, and Kneisley to act as a reasonably careful managing member, officer and/or director would have acted under the same or similar circumstances.

119.    As a result of the Defendants' actions in selling the Prospect Lien Loan, Debtor was harmed in an amount to be proven at trial.

120.    Defendants conduct as described herein was willful, wanton and intentional, and accordingly Plaintiff is entitled to punitive damages on this claim for relief in a sum to be determined at the time of trial of this matter.

## TWELFTH  CLAIM FOR RELIEF

## BREACH OF FIDUCIARY DUTY

### (As against Defendant Morad Harouni only)

121.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 60 of the complaint as if set forth herein in full.

122.    As a result of his position as a managing member, director, and/or officer of Debtor, Harouni owed a fiduciary duty to the Debtor.

123.    Harouni, acting in his capacity as the managing member, officer, and/or director of Debtor had access to and control over the seafood division of Debtor.

124.    Harouni failed to act as a reasonably careful managing member, officer and/or director would act by causing or allowing Monarch to acquire the Debtor's seafood division sales staff, computer files, vendor and customer accounts, and otherwise using the Debtor's confidential and proprietary information to compete in the seafood distribution business.

125.    By his failure to protect against or otherwise allow Monarch to acquire the Debtor's sales staff, computer files, vendor and customer accounts, and other confidential and proprietary information, Harouni failed to act as a reasonably careful managing member, officer and/or director would have acted under the same or similar circumstances.

126.    As a result of Harouni's acts or failure to act, Debtor was harmed in an amount to be proven at trial.

127.    Defendants conduct as described herein was willful, wanton and intentional, and accordingly Plaintiff is entitled to punitive damages on this claim for relief in a sum to be determined at the time of trial of this matter.

///

///

///

**THIRTEENTH CLAIM FOR RELIEF**

**BREACH OF FIDUCIARY DUTY**

**(As against Defendant Morad Harouni only)**

128.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 60 of the complaint as if set forth herein in full.

129.    Harouni, acting in his capacity as the managing member, officer, and/or director of Debtor had access to and control over confidential and proprietary information of the Debtor.

130.    Harouni's disclosure of confidential and proprietary information about Debtor's financial condition to Seafax was a failure to act as a reasonably careful managing member, officer and/or director would have acted under the same or similar circumstances.

131.    Harouni's disclosure of the Debtor's financial trouble resulted in competitor companies taking business away from the Debtor at a time when Debtor was having financial difficulties and could ill afford to lose any business.

132.    As a result of Harouni's acts or failure to act, Debtor was harmed in an amount to be proven at trial.

133.    Defendants conduct as described herein was willful, wanton and intentional, and accordingly Plaintiff is entitled to punitive damages on this claim for relief in a sum to be determined at the time of trial of this matter.

**FOURTEENTH CLAIM FOR RELIEF**

**NEGLIGENCE**

**(As against Harouni, MAC, Fowler, Mazer, Coleman, Goldberg, Dewan, Calme,**

**Moszer and Kneisley only)**

134.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 60 of the complaint as if set forth herein in full.

135.    The Defendants, Harouni, MAC, Fowler, Mazer, Coleman, Goldberg, Dewan, Calme, Moszer, and Kneisley, and each of them, as a result of their position with Debtor, owed a duty of care to the Debtor.

136.    The Defendants, Harouni, MAC, Fowler, Mazer, Coleman, Goldberg, Dewan, Calme,

1  Moszer, and Kneisley, and each of them, breached their duty of care to Debtor by acting negligently

2  in one or more of the following ways:

3            a.    By failing to provide safeguards and protection for the Debtor's confidential

4  and proprietary information, and specifically from preventing the disclosure of such confidential and

5  proprietary information by the former members, officers, and/or directors of Debtor to third parties;

6            b.    By failing to take adequate measures to recover the confidential and

7  proprietary information of the Debtor from its former members, officers, and/or directors upon the

8  disassociation of said former members, officers, and/or directors.

9            c.    By failing to obtain confidentiality and non-disclosure agreements with the

10  Debtor's sales staff following their disassociation from Debtor;

11            d.    By causing and or allowing Debtor's confidential and proprietary information

12  to be disclosed to third parties such as Seafax;

13            e.    By selling the Prospect Lien Loan to third party LAMCP Capital, LLC; and

14            f.    By causing and/or allowing Monarch to acquire the Debtor's seafood division

15  sales staff, computer files, vendor and customer accounts and other confidential and proprietary

16  information related thereto.

17        137.    As a direct and proximate result of The Defendants' Harouni, MAC, Fowler, Mazer,

18  Coleman, Goldberg, Dewan, Calme, Moszer, and Kneisley, negligence, Debtor has been harmed in

19  an amount to be proven at trial.

20        138.    Defendants conduct as described herein was willful, wanton and intentional, and

21  accordingly Plaintiff is entitled to punitive damages on this claim for relief in a sum to be

22  determined at the time of trial of this matter.

23                                **FIFTEENTH CLAIM FOR RELIEF**

24                                    **GROSS NEGLIGENCE**

25      **(As against Harouni, MAC, Fowler, Mazer, Coleman, Goldberg, Dewan, Calme,**

26                            **Moszer and Kneisley only)**

27        139.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 60 of the

28  complaint as if set forth herein in full.

140.    The Defendants, Harouni, MAC, Fowler, Mazer, Coleman, Goldberg, Dewan, Calme, Moszer, and Kneisley, and each of them, as a result of their position with the Debtor, owed a duty of care to Debtor.

141.    The Defendants, Harouni, MAC, Fowler, Mazer, Coleman, Goldberg, Dewan, Calme, Moszer, and Kneisley, and each of them, breached their duty of care to Debtor by demonstrating a lack of any care for Debtor or by their actions and failures to act which acts or failures to act were an extreme departure from what a reasonably careful person would do in the same or similar situation as demonstrated by one or more of the following:

a.    By failing to provide safeguards and protection for the Debtor's confidential and proprietary information, and specifically from preventing the disclosure of such confidential and proprietary information by the former members, officers, and/or directors of Debtor to third parties;

b.    By failing to take adequate measures to recover the confidential and proprietary information of the Debtor from its former members, officers, and/or directors upon the disassociation of said former members, officers, and/or directors.

c.    By failing to obtain confidentiality and non-disclosure agreements with the Debtor's sales staff following their disassociation from Debtor;

d.    By causing and or allowing Debtor's confidential and proprietary information to be disclosed to third parties such as Seafax;

e.    By selling the Prospect Lien Loan to third party LAMCP Capital, LLC; and

f.    By causing and/or allowing Monarch to acquire the Debtor's seafood division sales staff, computer files, vendor and customer accounts and other confidential and proprietary information related thereto.

142.    As a proximate result of The Defendants' Harouni, MAC, Fowler, Mazer, Coleman, Goldberg, Dewan, Calme, Moszer, and Kneisley, gross negligence, Debtor has been harmed in an amount to be proven at trial.

143.    Defendants conduct as described herein was willful, wanton and intentional, and accordingly Plaintiff is entitled to punitive damages on this claim for relief in a sum to be determined at the time of trial of this matter.

## SIXTEENTH CLAIM FOR RELIEF

## CONVERSION

### (As against Harouni)

144.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 60 of the complaint as if set forth herein in full.

145.    Within the last four years, Harouni exerted dominion and control over the assets of the Debtor, including but not limited to obtaining its electronic data information, sales information, and accounts converting the same for his own personal benefit and that of other companies in which he had an ownership interest.

146.    As a result of the Harouni's conduct as set forth above, the Debtor was damaged in an amount to be proved at trial but believe to be in excess of $5 million.

147.    Harouni's conduct in converting the Debtor's assets as heretofore described was not with malice, oppression, and/or fraud in acting or failing to act, and as a result Debtor is entitled to punitive damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiff prays for relief as follows:

**AS TO THE FIRST AND THIRD CLAIMS FOR RELIEF (Fraudulent Conveyances):**

1.    Avoidance of the Stock Buy-out Transfer by Debtor to Harouni and the Avisar Trust;

2.    Such preliminary and permanent relief as the Court may deem just and proper; and

3.    For such further and other relief as the Court deems just and appropriate.

**AS TO THE SECOND AND FOURTH CLAIMS FOR RELIEF (Fraudulent Conveyance):**

1.    Recovery of the Stock Buy-out Transfer funds or judgment for the amount of the Stock Buy-out Transfer by Debtor to Harouni and the Avisar Trust in the amount of $30,043,750.00.

2.    For such further and other relief as the Court deems just and appropriate.

**AS TO THE FIFTH, SIXTH, SEVENTH AND EIGHTH CLAIMS FOR RELIEF (Breach of Contract):**

1.    For compensatory damages against Harouni, MAC, Fowler, Goldberg, Dewan, Mazer, Calme, Moszer, and Kneisley, and in favor of Plaintiff in an amount according to proof before entry of judgment.

2.      For reasonable attorney fees and costs incurred.

3.      For such further and other relief as the Court deems just and appropriate.

**AS TO THE NINTH, TENTH, ELEVENTH, TWELTH AND THIRTEEN CLAIMS FOR**

**RELIEF CLAIMS FOR RELIEF (Breach of Fiduciary Duty):**

1.      For damages according to proof.

2.      For general damages according to proof.

3.      For punitive damages according to proof.

**AS TO THE FOURTEENTH AND FIFTEENTH CLAIMS FOR RELIEF (Negligence):**

1.      For damages according to proof.

2.      For general damages according to proof.

**AS TO THE EIGHTEENTH CLAIM FOR RELIEF (Conversion):**

1.      For damages according to proof.

2.      For general damages according to proof.

3.      For punitive damages according to proof.

DATED: April 3, 2015                         EZRA BRUTZKUS GUBNER LLP


                                             /s/ Larry W. Gabriel
                                         By:_____
                                             Steven T. Gubner
                                             Larry Gabriel
                                             Reagan E. Boyce
                                         Attorneys for, Howard Grobstein, Liquidating Trustee
                                         for the New Meatco Liquidating Trust

## DEMAND FOR JURY TRIAL AND CONSENT TO ENTRY OF FINAL JUDGMENT BY

## THE BANKRUTPCY COURT

Plaintiff Howard Grobstein, Liquidating Trustee for the New Meatco Liquidating Trust

hereby demands a trial by jury on all causes of action and issues so triable.  Plaintiff consents to the

entry of final judgment by the bankruptcy court.


DATED: April 3, 2015                              EZRA BRUTZKUS GUBNER LLP


                                                           /s/ Larry W. Gabriel
                                         By:_____
                                                Steven T. Gubner
                                                Larry Gabriel
                                                Reagan E. Boyce
                                         Attorneys for, Howard Grobstein, Liquidating Trustee
                                         for the New Meatco Liquidating Trust

FORM B104 (08/07)                                                    2007 USBC, Central District of California

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Page 2) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| HOWARD GROBSTEIN, LIQUIDATING TRUSTEE FOR THE NEW MEATCO LIQUIDATING TRUST, | MORAD HAROUNI, an individual;  THE AVISAR FAMILY TRUST, by and through its trustees, EYTAN AVISAR, an individual, and SUSAN AVISAR, an individual;  MEATCO PROVISIONS, INC. a California corporation; ROBERT A. FOWLER, an individual; ALEXANDER P. COLEMAN, an individual; RICK MAZUR, an individual;  JOSHUA GOLDBERG, an individual;  AMANT DEWAN, an individual;  MEATCO ACQUISITION COMPANY, LLC, a Delaware limited liability company; PROSPECT CAPITAL CORPORATION, a Maryland corporation; CALME HOLDINGS, INC., a Delaware corporation;  DAVID MOSZER, an individual; JOHN KNEISLEY, an individual;  and DOES 1 through 10, inclusive, |

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Ezra Brutzkus Gubner LLP<br>21650 Oxnard Street, Suite 500<br>Woodland Hills, CA  91367<br>(818) 827-9000 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☒ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint 1) TO AVOID FRAUDULENT TRANSFER (ACTUAL INTENT); 2) TO AVOID FRAUDULENT TRANSFER (CONSTRUCTIVE FRAUD) 3) TO RECOVER FRAUDULENT TRANSFERS; 4) BREACH OF FIDUCIARY DUTY; 5) BREACH OF CONTRACT;  6) NEGLIGENCE; 7) GROSS NEGLIGENCE; 8)  CONVERSION

**NATURE OF SUIT** (Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
**1** 13-Recovery of money/property - §548 fraudulent transfer
**2** 14-Recovery of money/property – other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation(other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

| | |
|---|---|
| ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h) | **FRBP 7001(8) Subordination of Claim or Interest**<br>☐ 81-Subordination of claim or interest |
| **FRBP 7001(4) – Objection/Revocation of Discharge**<br>☐ 41-Objection / revocation of discharge - §727(c),(d),(e) | **FRBP 7001(9) Declaratory Judgment**<br>☐ 91-Declaratory judgment |
| **FRBP 7001(5) – Revocation of Confirmation**<br>☐ 51-Revocation of confirmation | **FRBP 7001(10) Determination of Removed Action**<br>☐ 01-Determination of removed claim or cause |
| **FRBP 7001(6) – Dischargeability**<br>☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims<br>☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud<br>☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny | **Other**<br>☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et. seq.*<br> **3** 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case) |
| **(continued next column)** | |
| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☒ Check if a jury trial is demanded in complaint | Demand $ **To be determined** |
| Other Relief Sought | |

FORM B104 (08/07), page 2                              2007 USBC, Central District of California

| **BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES** | | |
|---|---|---|
| **NAME OF DEBTOR**<br>New Meatco Provisions, LLC | **BANKRUPTCY CASE NO.**<br>2:13-bk-22155-DS | |
| **DISTRICT IN WHICH CASE IS PENDING**<br>Central District of California | **DIVISIONAL OFFICE**<br>Los Angeles Division | **NAME OF JUDGE**<br>The Honorable Deborah J. Saltzman |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| **PLAINTIFF** | **DEFENDANT** | **ADVERSARY PROCEEDING NO.** |
| **DISTRICT IN WHICH ADVERSARY IS PENDING** | **DIVISIONAL OFFICE** | **NAME OF JUDGE** |
| **SIGNATURE OF ATTORNEY (OR PLAINTIFF)**<br><br>/s/ Larry W. Gabriel | | |
| **DATE**<br>4/3/2015 | **PRINT NAME OF ATTORNEY (OR PLAINTIFF)**<br>**Ezra Brutzkus Gubner LLP**<br>**By: Larry W. Gabriel** | |

## INSTRUCTIONS

   The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

   A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form

104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| STEVEN T. GUBNER - Bar No. 156593<br>LARRY W. GABRIEL - Bar No. 68329<br>REAGAN E. BOYCE - Bar No. 248064<br>EZRA BRUTZKUS GUBNER LLP<br>21650 Oxnard Street, Suite 500<br>Woodland Hills, CA 91367<br>Telephone: (818) 827-9000<br>Facsimile: (818) 827-9099<br>Email: sgubner@ebg-law.com; lgabrial@ebg-law.com;<br>          rboyce@ebg-law.com<br><br>          Howard Grobstein, Liquidating Trustee for<br>*Attorney for Plaintiff* the New Meatco Liquidating Trust | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>NEW MEATCO PROVISIONS, LLC,<br><br><br>                                              Debtor(s). | CASE NO.: 2:13-bk-22155-DS<br><br>CHAPTER: 11<br><br>ADVERSARY NUMBER: |
|---|---|
| HOWARD GROBSTEIN, LIQUIDATING TRUSTEE FOR THE NEW MEATCO LIQUIDATING TRUST,<br>                                              Plaintiff(s)<br><br>                    Versus<br><br>MORAD HAROUNI, an individual;<br>[See Attachment A for names of additional defendants]<br>                                              Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint.  You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page.  The deadline to file and serve a written response is _____.  If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| **Hearing Date:** _____<br>**Time:** _____<br>**Courtroom:** 1339 | **Place:**<br>☑ 255 East Temple Street, Los Angeles, CA 90012<br>☐ 3420 Twelfth Street, Riverside, CA 92501<br>☐ 411 West Fourth Street, Santa Ana, CA 92701<br>☐ 1415 State Street, Santa Barbara, CA 93101<br>☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 |
|---|---|

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.**  All parties must read and comply with the rule, even if you are representing yourself.  You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference.  A court-approved joint status report form is available on the court's website (LBR form F 7016-1.1) with an attachment for additional parties if necessary (LBR form F 7016-1.1a).  If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference.  **The court may fine you or impose other sanctions if you do not file a status report.  The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

> **KATHLEEN J. CAMPBELL**
> **CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____

> By: _____
> Deputy Clerk

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2012*                                  Page 2                          **F 7004-1.SUMMONS.ADV.PROC**

**ATTACHMENT A**

Names of Plaintiffs and Defendants

| Plaintiff(s): | Defendant(s): |
|---|---|
| HOWARD GROBSTEIN, LIQUIDATING TRUSTEE FOR THE NEW MEATCO LIQUIDATING TRUST, | MORAD HAROUNI, an individual<br>THE AVISAR FAMILY TRUST, by and through its trustees, EYTAN AVISAR, an individual, and SUSAN AVISAR, an individual<br>MEATCO PROVISIONS, INC. a California corporation<br>ROBERT A. FOWLER, an individual<br>ALEXANDER P. COLEMAN, an individual<br>RICK MAZUR, an individual<br>JOSHUA GOLDBERG, an individual<br>AMANT DEWAN, an individual<br>MEATCO ACQUISITION COMPANY, LLC, a Delaware limited liability company<br>PROSPECT CAPITAL CORPORATION, a Maryland corporation<br>CALME HOLDINGS, INC., a Delaware corporation<br>DAVID MOSZER, an individual<br>JOHN KNEISLEY, an individual<br>and DOES 1 through 10, inclusive |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:


A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:


☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.


☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.


☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____     _____
   *Date*             *Printed Name*                         *Signature*

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    Page 3                          **F 7004-1.SUMMONS.ADV.PROC**