1  STEVEN T. GUBNER - Bar No. 156593
LARRY W. GABRIEL - Bar No. 68329
2  REAGAN E. BOYCE - Bar No. 248064
EZRA BRUTZKUS GUBNER LLP
3  21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
4  Telephone:  (818) 827-9000
Facsimile:  (818) 827-9099
5  Email:    sgubner@ebg-law.com
            lgabriel@ebg-law.com
6            rboyce@ebg-law.com

7  Attorneys for Howard Grobstein,
Liquidating Trustee for the New Meatco Liquidating Trust

8

## UNITED STATES BANKRUPTCY COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

## LOS ANGELES DIVISION

11

| | |
|---|---|
| In re | Case No. 2:13-bk-22155-DS |
| NEW MEATCO PROVISIONS, LLC, | CHAPTER 11 |
| Debtor, | **ADVERSARY CASE NO. 2:15-ap-01170-DS** |
| ———————————————— | **FIRST AMENDED COMPLAINT** |
| HOWARD GROBSTEIN, LIQUIDATING TRUSTEE FOR THE NEW MEATCO LIQUIDATING TRUST, | **1) TO AVOID FRAUDULENT TRANSFERS (ACTUAL INTENT);**<br>**2) TO AVOID FRAUDULENT TRANSFERS (CONSTRUCTIVE FRAUD)**<br>**3) TO RECOVER FRAUDULENT TRANSFERS;** |
| Plaintiff<br>v. | **4) BREACH OF FIDUCIARY DUTY;**<br>**5) BREACH OF CONTRACT;** |
| MORAD HAROUNI, an individual;  THE AVISAR FAMILY TRUST, by and through its trustees, EYTAN AVISAR, an individual, and SUSAN AVISAR, an individual; and DOES 1 through 10, inclusive, | **6) NEGLIGENCE;**<br>**7) GROSS NEGLIGENCE;**<br>**8) CONVERSION** |
| Defendants. | **DEMAND FOR JURY TRIAL** |
| | [11 U.S.C. §§544, 550; Cal. *Civ. Code* §3439] |
| | **Initial Status Conference**<br>**Date:  TBD**<br>**Time:  TBD**<br>**Place:** Courtroom 1339<br>        United States Bankruptcy Court<br>        255 E. Temple Street<br>        Los Angeles, CA 90012 |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1306772

1

Plaintiff, HOWARD GROBSTEIN, the duly authorized and acting, liquidating trustee ("*Trustee*" or "*Plaintiff*") for the New Meatco Liquidating Trust, (the "*Trust*"), as the successor in interest to the Debtor and Debtor-In-Possession, New Meatco Provisions, LLC ("*New Meatco*" or the "*Debtor*"), for claims against Defendants MORAD HAROUNI, an individual ("*Harouni*")  and THE AVISAR FAMILY TRUST, by and through its trustees, EYTAN AVISAR, an individual, and SUSAN AVISAR, an individual (collectively the "*Avisar Family Trust*"), alleges as follows:

## I.      REQUIRED PLEADING DISCLOSURE

1.    In accordance with the requirements of Local Bankruptcy Rule 7008-1, the Trustee asserts that at least some of the claims for relief in this First Amended Complaint constitute core matters pursuant to 28 U.S.C. § 1334 and 28 U.S.C. §§ 157(a), (b)(2)(A), (b)(2)(H) and (b)(2)(O).  The other claims for relief are related to the bankruptcy case and the outcome of the claims could have a significant impact on the bankruptcy estate.   To the extent that the claims for relief herein are determined to be non-core matters, the Trustee consents to entry of final orders or judgment by the Bankruptcy Court.

## II.     NATURE OF PROCEEDING

2.    By this action the Trustee seeks to avoid and recover the approximate $18 million, or an amount according to proof, that Defendants Harouni and the Avisar Family Trust obtained from the Debtor through a leveraged buyout that they engineered in April 2011, and that rendered the Debtor insolvent and unable to pay debts as they became due.  The Trustee also asserts claims against Harouni and the Avisar Family Trust for breach of their fiduciary obligations owed to the Debtor as officers and directors of New Meatco, for breaches of contractual confidentiality and non-compete obligations owed to New Meatco, and for conversion of New Meatco's corporate assets.

## III.    JURISDICTION AND VENUE

3.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, because, among other things, the claims for relief arise in or are related to a case pending under title 11 in this Court.

4.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 151, the *Local Bankruptcy Rules* of the United States Bankruptcy Court for the Central District of

1306772

1   California ("**Bankruptcy Court**"), and General Order Number 13-05 of the United States District

2   Court for the Central District of California.

3        5.     In addition, this proceeding is a civil proceeding arising in or related to a case under

4   Title 11 of the *United States Code* ("**Bankruptcy Code**"). This adversary proceeding arises in or

5   relates to the bankruptcy case *In re New Meatco Provisions, LLC* case number 2:13-bk-22155-DS

6   ("**Meatco Bankruptcy**").

7        6.     Plaintiff has standing to bring this adversary proceeding pursuant to 11 U.S.C. § 323

8   and the Court Approved *Third Amended Joint Chapter 11 Plan of the Official Committee of*

9   *Unsecured Creditors and New Meatco Provisions, LLC*, ("**Plan**") approved by the Bankruptcy Court

10  on August 26, 2014, and the powers and authority granted to Plaintiff under the concurrent

11  Liquidating Trust Agreement executed pursuant to the Plan on August 27, 2014. Howard Grobstein

12  was appointed the Liquidating Trustee on August 27, 2014, pursuant to the Plan and Liquidating

13  Trust Agreement and continues to serve in that capacity. Because the Trustee was not appointed as

14  Liquidating Trustee until after the occurrence of the facts alleged in this Complaint, he has no

15  personal knowledge of such facts. Accordingly, the Trustee alleges all such facts on information and

16  belief based on a review of business records of the Debtor and other records obtained.

17  **IV.**    <u>**THE PARTIES**</u>

18      **A.**    **Plaintiff.**

19       7.     Plaintiff, Howard Grobstein, (the "Trustee") is the duly authorized and acting

20  Liquidating Trustee for the New Meatco Liquidating Trust, the successor in interest to the assets of

21  the Debtor and Debtor-In-Possession, New Meatco Provisions, LLC ("**New Meatco**"), United States

22  Bankruptcy Court, Central District of California, Los Angeles Division, Case No. 2:13-bk-22155-

23  PC.  The Trustee acts solely in his capacity as the Liquidating Trustee in bringing this action.

24      **B.**    **Defendants.**

25       8.     Defendant Morad Harouni, ("**Harouni**"), is a resident of Los Angeles County, State

26  of California.

27       9.     Defendant The Avisar Family Trust is a family trust established under and pursuant to

28  California law.

10.    Defendant Eytan Avisar is sued herein in his capacity as a trustee for the Avisar Family Trust ("*E.Avisar*"). At all times relevant herein, E.Avisar resided in and/or conducted business in the County of Los Angeles, State of California.

11.    Defendant Susan Avisar, ("*S.Avisar*" and jointly with *E.Avisar*, the "*Avisar Trustees*") is sued herein in her capacity as trustee for the Avisar Family Trust. At all times relevant herein *S.Avisar* resided in, and/or conducted business in the County of Los Angeles, State of California.

**C.    DOE Defendants**

12.    Plaintiff is ignorant of the true names of Defendants DOES 1 through 10 inclusive and has sued them by the foregoing fictitious names, and states that when their true names are discovered, the Complaint will be amended to include their true names.

**D.    Agency Allegations**

13.    Plaintiff is informed and believes and based thereon alleges that each of the named Defendants and DOES 1 through 10, (collectively the "*Defendants*" and each individually a "*Defendant*") are and/or were the partners, principals, servants, employees, employers, agents, representatives, subsidiaries, affiliates, joint venturers, and/or the alter-egos of each other Defendant and each Defendant was otherwise acting in concert with, aided and abetted, and acting in furtherance of a civil conspiracy with each other Defendant, in doing all things herein alleged, and was acting within the purpose and scope of their authority as such partners, principals, servants, employees, employers, agents, representatives, subsidiaries, affiliates, joint venturers, and/or the alter-ego relationship with each other Defendant, and engaged in the conduct that was authorized, ratified, approved and/or otherwise sanctioned with advanced knowledge or subsequent ratification or acquiescence by each other Defendant.

14.    Plaintiff is informed and believes, and based thereon alleges that each of the Defendants were responsible, negligently, intentionally and/or in some actionable manner, including as corporate successors liable for the acts of their predecessors, for the events referred to herein, and caused injuries and damages legally to Plaintiff, as alleged, either through each Defendants' own conduct, or through the conduct of each Defendants' agents, servants, employees, aiders and

4

abettors, and co-conspirators, or due to the ownership, maintenance, or control of the instrumentality

causing the injury to Plaintiff, or in some other actionable manner.

**V.    STATEMENT OF FACTS APPLICABLE TO ALL CLAIMS FOR RELIEF**

    **A.    Background**

    15.    Commencing in or around 1988 and up until April 2011, Harouni and the Avisar

Family Trust each owned a 50% interest in a company, Meatco Provisions, Inc., ("***Meatco***"), an

importer and distributor of refrigerated and frozen protein products to approximately 2,000 Hispanic

grocery stores and bodegas in Southern and Central California.  Its products included meat, poultry,

and seafood, with its seafood offerings being marketed under the name King Seafood. Meatco

operated out of a 191,270 square foot, leased warehouse facility located just south of downtown Los

Angeles.

    16.    Meatco's financial condition was on solid footing.  Meatco's balance sheet as of

December 31, 2008 showed total assets of $22,140,783, total liabilities of $13,692,618 million, and

stockholders' equity of $8,448,165 million.  Meatco's net income for 2008 was $2,778,975.

    17.    Meatco's balance sheet as of December 31, 2009 showed total assets of $27,778,998,

total liabilities of $17,455,009, and total shareholders' equity of $10,323,989.  Meatco's net income

for 2009 was $2,894,823.

    18.    Meatco's balance sheet as of December 31, 2010 showed assets of $38,879,742, total

liabilities of $24,015,675 and total shareholders' equity of $14,864,067.  Meatco's net income for

2010 was $6,620,954.

          **The Leveraged Buyout**

    19.    Harouni and the Avisar Family Trust became interested in liquidating their ownership

interests in Meatco, and were able to negotiate a leveraged buyout of Meatco, whereby Harouni and

the Avisar Family Trust would receive substantial amounts for their ownership interests through a

leveraged buyout.  The leveraged buyout would consist of adding significant debt to the balance

sheet to fund the amounts to be paid to Harouni and the Avisar Family Trust.  Harouni and the

Avisar Family Trust were aware of the structure of the Leveraged Buyout, and that funds to be used

to pay them were to be largely raised through the Debtor's incurrence of new debt.

5

20.    In order to facilitate the leveraged buyout of Meatco, on or about April 11, 2011, Harouni and the Avisar Trustees formed a California limited liability company, New Meatco Provisions, LLC, the debtor in the above referenced bankruptcy proceeding ("New Meatco" or "Debtor").  Meatco was the sole member of New Meatco.   At or about the same time, Harouni and the Avisar Trustees caused Meatco to transfer all of its assets and liabilities to New Meatco in exchange for all of the membership interests of New Meatco.  As a result, Meatco's only asset following the transfer was its 100% membership interest in New Meatco. The transfer of assets and liabilities in exchange for membership interests, and the subsequent leveraged buyout, was code-named "Project Protein."

21.    On or about April 18, 2011, Meatco Acquisition Company, LLC ("MAC LLC") a Delaware limited liability company, entered into an Interest Purchase Agreement (the "Purchase Agreement").  The Purchase Agreement was by and among MAC LLC, Meatco, Harouni, the Avisar Family Trust and Meatco, pursuant to which MAC LLC purchased and acquired from Meatco 80.10% of the membership interests in New Meatco.  The remaining 19.90% of membership interests in New Meatco were indirectly owned by Harouni as the sole remaining shareholder of Meatco.   MAC LLC and Meatco also entered into an LLC operating agreement ("Operating Agreement") for New Meatco which agreement included non-compete and confidentiality clauses.

22.    The Purchase Agreement states in Paragraph 3.2 that "Purchaser has informed Sellers and the Company, and Sellers and the Company agree, that the Purchase Price will be funded by: (i) loans (the "Debt Financed Portion") to New Meatco of $25,000,000.00; (ii) cash up to $7 million ("Purchaser's Cash Payment") paid by Purchaser; and (iii) the Seller Note (described in Section 4.3(d)) in the amount of $5,000,000.00.   Sellers and the Company agree to cooperate reasonably with Purchaser in its efforts to obtain the loans described above.  Notwithstanding anything to the contrary contained in this Agreement, Purchaser's obligation with respect to the payment of the Purchase Price shall be limited to the payment of Purchaser's Cash Payment described in clause (ii) of the second sentence of this Section 3.2."

23.    The Purchase Agreement provides in Paragraph 4.1 that the amount to be paid at the Closing shall be $35,043,750 (the "Purchase Price"), subject to adjustment pursuant to Section 4.2,

1306772

and payable in accordance with Section 4.3 as follows:

(a) to each Lender in an amount sufficient to satisfy in full all amounts due from the Company to such Lender as set forth in such Lender's Bank Payoff Statement;

(b) to each Person to which Transaction Expenses are owed by the Sellers or the Company, as evidenced on the Certificate of Closing Expenses;

(c) an amount equal to the difference between (x) $30,043,750 and (y) the aggregate amount payable pursuant to clauses (a) and (b), to an account or accounts designated in writing by Meatco prior to Closing; and

(d) a subordinated promissory note issued by New Meatco in the amount of $5,000,000 payable to Meatco (the "Seller Note"), which Seller Note shall have a term of six (6) years, bear interest at seven percent (7%) per annum (of which 5% shall be payable in cash and 2% shall be payable in kind), with interest payable quarterly in arrears and principal to be paid in a balloon payment at maturity, stand junior in all respects to the Debt of New Meatco with New Lender(s) incurred in connection with the acquisition contemplated by this Agreement, the ongoing financing of the Business and any lender who finances New Meatco's capital improvements and be subject to the terms of a subordination agreement with the New Lenders in form and substance reasonably acceptable to the Sellers. . . .  The cash proceeds allocable to Harouni and Avisar (before deduction and/or adjustment (if any) pursuant to clauses (a) and (b) above and Section 4.2(a)) will be $15,000,000 to Avisar and $15,043,750 to Harouni directly or through his continuing interest in Meatco.  Sellers shall cause Harouni to become the sole shareholder of Meatco following the Closing and thereby indirectly own 19.9% of New Meatco.

24.    On or about April 18, 2011, New Meatco:

a.    Obtained a $25 million line of credit from Wells Fargo Bank;

b.    Obtained a $3 million term loan from Wells Fargo Bank;

c.    Obtained a $13 million loan from Prospect Capital Corporation ("Prospect"). The above financings (collectively the "2011 Financing") were secured by a first lien in favor of Wells Fargo Bank, and a second subordinated lien in favor of Prospect, as against all of New Meatco's assets.

1306772

25.     On or about April 27, 2011, Defendants, Harouni and the Avisar Family Trust, and MAC LLC, completed the Membership Interest Purchase Agreement as specified in paragraphs 16-17 above.  Plaintiff is informed and believes and thereby alleges that the funding for the transfers to Harouni and the Avisar Family Trust was from the 2011 Financing, including a draw down on the line of credit.  As a result of the structure of the deal, and the payments made, upon the closing of the transaction, MAC LLC became the owner of an 80.10% interest in New Meatco, and Harouni indirectly owned (through Meatco) a 19.90% interest in New Meatco.    The transactions in Paragraphs 19 – 24 above are collectively referred to as the "Leveraged Buyout."

26.     The Leveraged Buyout rendered New Meatco insolvent and unable to pay debts as they became due.  The Debtor did not receive reasonably equivalent value for the Leveraged Buyout.

27.     There are, at all times mentioned herein with respect to the transfers from New Meatco to the Defendants, creditors holding unsecured claims that are allowable under 11 U.S.C. § 502.

**B.      Post-Acquisition Management of the Debtor**

28.     At or about the same time as the above described transactions, in April 2011, Harouni was employed as the President and CEO of the New Meatco and a member of the board of directors. In or around April 2011, Harouni and New Meatco entered into a written employment agreement, (the "***Harouni Employment Contract***") setting forth the duties and obligations of Harouni which included non-compete and confidentiality provisions. While employed by Debtor, Harouni owned minority equity interests in two other companies, Monarch Trading Company, LLC ("***Monarch***") and Lawrence Wholesale ("***Lawrence***") both of whom were and are engaged in the same business as New Meatco and were competitors of New Meatco.

**C.      Events Leading Up to the Chapter 11 Filing**

29.     In or around April 2012, New Meatco was unable to meet certain covenants under its secured loan agreements, and  New Meatco and Wells Fargo and Prospect (Wells Fargo and Prospect are collectively referred to herein as the "Secured Lenders") entered into numerous amendments and forbearance agreements in an effort to address New Meatco's liquidity and business concerns.  Performance, however, continued to decline.

1306772

30.     Upon information and belief, in or around 2012, Harouni began diverting inventory, employees, and data from New Meatco for his own benefit to Monarch, which was also one of New Meatco's largest creditors.  New Meatco's books and records also reflect that $38,500.00 was owed to another Harouni related company, Lawrence.

31.     In or about November 2012, New Meatco defaulted on its secured loan obligations to Prospect by failing to meet certain covenants, including failing to satisfy its minimum required EBITDA.  Around this same time, New Meatco experienced a large decline in its inventory.

32.     In addition to the significant financial issues caused by the Leveraged Buyout, between the time of the MAC acquisition in April 2011 and November 2012, New Meatco was experiencing extensive operational issues impacting the company's viability attributable to Harouni's management, including but not limited to:

a.     ***Ineffective Management***. The company's growth was accompanied by increasing layers of complexity, and obtaining the support of more seasoned management was one of the factors that lead the Debtor to enter into the MAC Acquisition.

b.     ***Inefficient Warehousing***. Prior to its acquisition, the Debtor operated out of multiple warehouses. In August 2012 the Debtor consolidated its operations into a single warehouse facility that increased the Debtor's rent by $400,000 annually.

c.     ***Ineffective Inventory Controls***. The Debtor's key warehousing, inventory control, and distribution systems were ineffective, poorly organized, inefficient, and gave the Debtor no visibility into, or control over, its inventory. Notwithstanding its new warehouse, these inefficiencies resulted in massive inventory shortfalls, including a $2 million inventory write off in 2012.

d.     ***Inappropriate Inventory Control***. Although the Debtor began soliciting proposals to implement a state-of-the-art enterprise reporting system that would provide it with visibility into and control over its inventory, this project was never completed.

e.     ***Spiraling Cost Structure***. Following the acquisition, salaries increased by $300,000 annually, and workers' compensation premiums escalated by $600,000 annually, as a result of the Debtor's correction of certain errors in its reporting. The cost of equipment leases

1306772

1   increased by $800,000 annually as New Meatco acquired additional equipment in connection with

2   the move to a new warehouse, and fuel costs jumped by $500,000 annually as new equipment was

3   moved into production.  In addition, expenses increased by $500,000 annually. In total, these items

4   added $3.1 million annually to New Meatco's operating costs.

5          33.    In 2013, New Meatco's business continued to decline.  Immediately prior to the filing

6   of bankruptcy, several key salespeople in the seafood division left the employ of New Meatco only

7   to immediately be employed by Monarch.  In addition, data files had been wiped totally clean from

8   the computers in the seafood division, and Excel spreadsheets and similar files were also completely

9   removed from the computers.  No other division of New Meatco had its computers wiped. New

10  Meatco subsequently sold its accounts receivable and inventory and subsequently filed its

11  bankruptcy petition.

12         34.    Upon information and belief, New Meatco's electronic information and sales

13  personnel were later used by Harouni at Monarch, which prior to New Meatco's bankruptcy filing

14  did not operate a seafood division, but  by early 2013 began operating a seafood division in direct

15  competition with New Meatco.

16              **D.    Harouni Discloses The Debtor's Confidential Information**

17         35.    Around March 29, 2013, Seafax, a leading credit reporting and collection agency for

18  the North American food industry, downgraded New Meatco's credit rating from "inconclusive" to

19  "cautionary" status.  Following this downgrade, New Meatco's major suppliers stopped further

20  shipments of inventory.  Without the ability to meet customer orders, New Meatco's customers

21  rapidly turned to competitors and New Meatco's sales team resigned.  New Meatco was thereupon

22  unable to continue and was forced to cease operations.

23         36.    The Seafax report states that it is based, at least in part, on information that Seafax

24  learned from Harouni.  The information that Seafax attributed to Harouni included information about

25  a possible change of ownership, information about New Meatco's default with respect to the

26  Prospect Lien Loan and the lenders' Default and Voting Rights Notice under their security

27  agreement, and statements to the effect that the company's lenders "took over operational control of

28  the business."

1306772

**E.      New Meatco's Post Leveraged Buyout Financial Condition and the Bankruptcy Petition**

37.      New Meatco's balance sheet as of December 31, 2011, for the year during which the Leveraged Buyout took place, showed assets of $60,099,222 (including $19,853,456 of goodwill, which was not on the prior balance sheets), total liabilities of $56,089,302 in liabilities and total shareholders' equity of $4,009,920.  Excluding the goodwill, New Meatco's liabilities exceeded its assets by approximately $15.8 million.  Instead of generating net income, as Meatco had done in prior years, Net Meatco suffered a net loss of ($2,758,968) in 2011.

38.      New Meatco's financial condition continued to worsen after 2011 primarily as a result of the Leveraged Buyout and the actions of Harouni set forth herein.

39.      Shortly thereafter, on or about May 8, 2013, ("***Petition Date***") New Meatco filed for bankruptcy.  The schedules filed by New Meatco in the bankruptcy case show total assets of $894,887 (primarily consisting of security deposits for leases), and total liabilities of $33,097,182.

**FIRST CLAIM FOR RELIEF**

**AVOIDANCE OF FRAUDULENT TRANSFER**

**(As against Defendants Morad Harouni and The Avisar Family Trust)**

**[11 U.S.C. §§ 544, 550; Cal. Civ. Code § 3439.04]**

40.      Plaintiff realleges and incorporates herein by reference paragraphs 1 through 39 of the amended complaint as if set forth herein in full.

41.      During the seven year period immediately preceding the Petition Date, in or around April 2011, New Meatco made transfers of the Debtor's property through the Leveraged Buy-Out, and the 2011 Financing (collectively the "Transfers") to or for the benefit of Harouni and the Avisar Family Trust with the actual intent to delay, hinder or defraud the Debtors' creditors.

42.      Accordingly, the Transfers made by New Meatco to Harouni and the Avisar Family Trust are avoidable and should be avoided as fraudulent pursuant to 11 U.S.C. § 544 and Cal. *Civ. Code* § 3439.04(a) and 3439.07.

///

///

11

1306772

**SECOND CLAIM FOR RELIEF**

**RECOVERY OF AVOIDED FRAUDULENT TRANSFER**

**(As against Defendants Morad Harouni and The Avisar Family Trust)**

**[11 U.S.C. §§ 544, 550; Cal. Civ. Code § 3439.07]**

43.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 42 of the amended complaint as if set forth herein in full.

44.    By reason of the foregoing, the Trustee is entitled to recover for the benefit of New Meatco's estate the Transfers from Harouni and the Avisar Family Trust pursuant to 11 U.S.C. §§ 544, 550(a)(1) and Cal. *Civ. Code* § 3439.07.

**THIRD CLAIM FOR RELIEF**

**AVOIDANCE OF FRAUDULENT TRANSFER**

**(As against Defendants Morad Harouni and The Avisar Family Trust)**

**[11 U.S.C. §§ 544, 550; Cal. Civ. Code § 3439.04]**

45.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 39 of the amended complaint as if set forth herein in full.

46.    The Debtor did not receive reasonably equivalent value from Harouni or the Avisar Family Trust in exchange for the Transfers.

47.    At the time the Transfers were made, New Meatco (i) was insolvent, or became insolvent as a result of the obligations or transfers; and/or (ii) was engaged in a business or transaction, or was about to engage in a business or a transaction, for which any remaining property of the Debtor was an unreasonably small capital; (iii) intended to incur, or reasonably should have believed that it would incur, debts beyond its ability to pay as they came due; and/or (iv) made such transfer to or for the benefit of an insider.

48.    Accordingly, the Transfers to Harouni and the Avisar Family Trust are avoidable and should be avoided pursuant to 11 U.S.C. § 544 and Cal. *Civ. Code* § 3439.04(b) or 3439.05 and 3439.07.

///

///

12

1306772

**FOURTH CLAIM FOR RELIEF**

**RECOVERY OF AVOIDED FRAUDULENT TRANSFER**

**(As against Defendants Morad Harouni and The Avisar Family Trust)**

**[11 U.S.C. §§ 544, 550; §3439.07]**

49.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 39 and paragraphs 45 through 48 of the amended complaint as if set forth herein in full.

50.    By reason of the foregoing, the Trustee is entitled to recover for the benefit of New Meatco's estate the Transfers from Harouni and the Avisar Family Trust pursuant to 11 U.S.C. §§ 544, 550(a)(1) and Cal. *Civ. Code* § 3439.07.

**FIFTH CLAIM FOR RELIEF**

**BREACH OF CONTRACT**

**(As against Defendant Morad Harouni only)**

51.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 39of the amended complaint as if set forth herein in full.

52.    Harouni entered into the Harouni Employment Contract with Debtor as part of the Leveraged Buyout. The Harouni Employment Contract contained a non-compete clause.

53.    The Harouni Employment Contract constitutes a binding, enforceable agreement between the Debtor and Harouni.

54.    Debtor performed all of its obligations under the Harouni Employment Contract except for those performances which were excused

55.    Harouni breached his obligations owed to the Debtor under the Harouni Employment Contract by, among other things:

a.    failing to disclose his interests in competitors such as Lawrence Wholesale and other competitors of Debtor while employed by the Debtor;

b.    transferring or causing the transfer of assets, customer accounts, and electronic data to Monarch without adequate consideration being paid to the Debtor, and in violation of his obligations to preserve the Debtor's assets and not to compete against the Debtor vis a vis its business operations.

13

56.    Harouni's conduct as set forth above, was, and is, a material breach of his contractual obligations owed to the Debtor.

57.    As a result of Harouni's breach of the Harouni Employment Contract, Debtor was injured in an amount to be proven at trial but believed to be in excess of $1 million.

58.    The Harouni Employment  Contract provides for the payment of attorney fees in the event of suit thereon.  Accordingly, the Trustee is entitled to his reasonable attorney fees incurred in the prosecution of this action.

**SIXTH CLAIM FOR RELIEF**

**BREACH OF CONTRACT**

**(As against Defendants, Morad Harouni, and DOES 6 through 10)**

59.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 39 of the amended complaint as if set forth herein in full.

60.    The Operating Agreement constitutes a binding, enforceable agreement between New Meatco and MAC LLC. The provisions of the Operating Agreement are also binding and enforceable against Harouni as a result of his relationship to the Debtor.

61.    New Meatco performed all of its obligations under the Operating Agreement except for those performances which were excused.

62.    Harouni, and DOES 6 through 10, and each of them, breached the Operating Agreement, and in particular the Non-Compete Clause of the Operating Agreement when they, acting in concert with each other, allowed Monarch to obtain the sales staff, computer files, vendor and customer accounts and other confidential and proprietary information relating to the seafood division of Debtor.

63.    Plaintiff is informed and believes and based thereon alleges that Harouni and DOES 6 through 10, and each of them, knew of, agreed with, approved, and/or provided substantial assistance to Harouni's breach of the Operating Agreement.

64.    As a direct, proximate result of Harouni's and DOES 6 through 10's breach of the Operating Agreement, New Meatco was injured in an amount to be proven at trial but believed to be in excess of $1 million.

1306772

65.     The Operating Agreement provides for the payment of attorney fees in the event of suit thereon.  Accordingly, the Trustee is entitled to his reasonable attorney fees incurred in the prosecution of this action.

### SEVENTH CLAIM FOR RELIEF

### BREACH OF CONTRACT

**(As against Defendants, Morad Harouni, and DOES 6 through 10 only)**

66.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 39 of the amended complaint as if set forth herein in full.

67.     The Purchase Agreement is a binding and enforceable agreement between New Meatco and MAC LLC. The provisions of the Purchase Agreement are also binding and enforceable against Harouni and DOES 6 through 10 as a result of their relationship to MAC LLC and New Meatco.

68.     The Debtor performed all of its obligations under the Purchase Agreement except for those performances which were excused.

69.     Harouni and DOES 6 through 10, and each of them, breached the Purchase Agreement, and in particular the Non-Compete Clause of the Purchase Agreement when they, acting in concert with each other, allowed Monarch to obtain the sales staff, computer files, vendor and customer accounts and other confidential and proprietary information relating to the seafood division of the Debtor

70.     Plaintiff is informed and believes and based thereon alleges that Harouni and DOES 6 through 10, and each of them, knew of, agreed with, approved, and/or provided substantial assistance to Harouni's breach of the Purchase Agreement.

71.     As a direct, proximate result of Harouni's and DOES 6 through 10's breach of the Purchase Agreement, Debtor was injured in an amount to be proven at trial.

72.     The Purchase Agreement provides for the payment of attorney fees in the event of suit thereon.  Accordingly, the Trustee is entitled to his reasonable attorney fees incurred in the prosecution of this action.

///

15

1306772

### EIGHTH  CLAIM FOR RELIEF

### BREACH OF FIDUCIARY DUTY

### (As against Defendant Morad Harouni only)

73.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 39 of the amended complaint as if set forth herein in full.

74.     As a result of his position as a managing member, director, and/or officer of New Meatco, Harouni owed a fiduciary duty to New Meatco.

75.     Harouni, acting in his capacity as the managing member, officer, and/or director of New Meatco had access to and control over the seafood division of New Meatco.

76.     Harouni failed to act as a reasonably careful managing member, officer and/or director would act by causing or allowing Monarch to acquire New Meatco's seafood division sales staff, computer files, vendor and customer accounts, and otherwise using New Meatco's confidential and proprietary information to compete in the seafood distribution business, and specifically for the benefit of Monarch.

77.     By his failure to protect against or otherwise allowing Monarch to acquire the Debtor's sales staff, computer files, vendor and customer accounts, and other confidential and proprietary information, Harouni failed to act as a reasonably careful managing member, officer and/or director would have acted under the same or similar circumstances.

78.     In addition to the foregoing, Harouni had knowledge that the Leveraged Buyout would render New Meatco insolvent and/or unable to pay its debts as they became due.  Harouni and the other officers, directors, members and managers therefore owed a duty to creditors, rather than to shareholders, in approving the Leveraged Buyout.  In orchestrating and approving the Leveraged Buyout, and approving the Transfers, and accepting the transfer in excess of over $9 million, Harouni breached his fiduciary duty to New Meatco and its creditors.

79.     As a result of Harouni's acts or failure to act, New Meatco was harmed in an amount to be proven at trial.

///

///

1306772

80.    Defendants' conduct as described herein was willful, wanton and intentional, and accordingly Plaintiff is entitled to punitive damages on this claim for relief in a sum to be determined at the time of trial of this matter.

### NINTH CLAIM FOR RELIEF

### BREACH OF FIDUCIARY DUTY

**(As against Defendant Morad Harouni only)**

81.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 39 of the amended complaint as if set forth herein in full.

82.    Harouni, acting in his capacity as the managing member, officer, and/or director of Debtor had access to and control over confidential and proprietary information of New Meatco.

83.    Harouni's disclosure of confidential and proprietary information about New Meatco's financial condition to Seafax was a failure to act as a reasonably careful managing member, officer and/or director would have acted under the same or similar circumstances.

84.    Harouni's disclosure of New Meatco's financial trouble resulted in competitor companies taking business away from New Meatco at a time when New Meatco was having financial difficulties and could ill afford to lose any business.

85.    As a result of Harouni's acts or failure to act, New Meatco was harmed in an amount to be proven at trial.

86.    Harouni's conduct as described herein was willful, wanton and intentional, and accordingly Plaintiff is entitled to punitive damages on this claim for relief in a sum to be determined at the time of trial of this matter.

### TENTH CLAIM FOR RELIEF

### CONVERSION

**(As against Defendant Morad Harouni only)**

87.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 39 of the amended complaint as if set forth herein in full.

88.    Within the last four years, Harouni exerted dominion and control over the assets of New Meatco, including but not limited to obtaining its electronic data information, sales

1306772

1  information, and accounts converting the same for his own personal benefit and that of other

2  companies in which he had an ownership interest.

3       89.  As a result of Harouni's conduct as set forth above, New Meatco was damaged in an

4  amount to be proved at trial, but believed to be in excess of $5 million.

5       90.  Harouni's conduct in converting New Meatco's assets as heretofore described was

6  with malice, oppression, and/or fraud in acting or failing to act, and as a result New Meatco is

7  entitled to punitive damages in an amount to be proven at trial.

8       **WHEREFORE,** Plaintiff prays for relief as follows:

9  <u>**AS TO THE FIRST AND THIRD CLAIMS FOR RELIEF**</u>

10  **(Fraudulent Conveyances)**

11  1.  Avoidance of the Transfers by Debtor to Harouni and the Avisar Family Trust;

12  2.  Such preliminary and permanent relief as the Court may deem just and proper;

13  3.  For Interest according to law: and,

14  3.  For such further and other relief as the Court deems just and appropriate.

15  <u>**AS TO THE SECOND AND FOURTH CLAIMS FOR RELIEF**</u>

16  **(Fraudulent Conveyance)**

17  1.  Recovery of the Transfers in the amount of $18,100,000, or an amount according to

18  proof before entry of judgment;

19  2.  For interest according to law;

20  3.  For such further and other relief as the Court deems just and appropriate.

21  <u>**AS TO THE FIFTH, SIXTH, AND SEVENTH CLAIMS FOR RELIEF**</u>

22  **(Breach of Contract)**

23  1.  For compensatory damages against Harouni, and in favor of Plaintiff, in an amount

24  according to proof before entry of judgment;

25  2.  For reasonable attorney fees and costs incurred; and,

26  3.  For such further and other relief as the Court deems just and appropriate.

27  ///

28  ///

18

1306772

## AS TO THE EIGHT AND NINTH  CLAIMS FOR RELIEF

### (Breach of Fiduciary Duty)

1. For damages according to proof;

2. For general damages according to proof; and,

3. For punitive damages according to proof.

## AS TO THE TENTH CLAIMS FOR RELIEF

### (Conversion)

1. For damages according to proof;

2. For general damages according to proof;

3. For punitive damages according to proof; and,

4. For interest according to law.

## AS TO ALL CLAIMS FOR RELIEF

1. For attorney fees as allowed by law;

2. For costs of suit;

3. For interest on all amounts owed;

4. For such other and further relief as the Court deems just and proper.

DATED:  May 7, 2015

Steven T. Gubner
Larry Gabriel
Reagan E. Boyce
EZRA BRUTZKUS GUBNER LLP

/s/ Larry W. Gabriel
By:_____
Attorneys for, Howard Grobstein, Liquidating Trustee
for the New Meatco Liquidating Trust

1306772

1

## DEMAND FOR JURY TRIAL AND CONSENT TO ENTRY OF FINAL JUDGMENT BY

2

## THE BANKRUTPCY COURT

3        Pursuant to Fed. R. Civ. P. 38, Plaintiff Howard Grobstein, Liquidating Trustee for the New

4   Meatco Liquidating Trust hereby demands a trial by jury on all causes of action and issues so triable.

5   Plaintiff consents to the entry of final judgment by the bankruptcy court.

6

7   DATED: May 7, 2015                        EZRA BRUTZKUS GUBNER LLP

8
                                                    /s/ Larry W. Gabriel
9                                             By:_____
                                                    Steven T. Gubner
10                                                  Larry Gabriel
                                                    Reagan E. Boyce
11                                            Attorneys for, Howard Grobstein, Liquidating Trustee
12                                            for the New Meatco Liquidating Trust

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| STEVEN T. GUBNER - Bar No. 156593<br>LARRY W. GABRIEL - Bar No. 68329<br>REAGAN E. BOYCE - Bar No. 248064<br>EZRA BRUTZKUS GUBNER LLP<br>21650 Oxnard Street, Suite 500<br>Woodland Hills, CA 91367<br>Telephone: (818) 827-9000<br>Facsimile: (818) 827-9099<br>Email: sgubner@ebg-law.com; lgabrial@ebg-law.com;<br>        rboyce@ebg-law.com<br>                   Howard Grobstein, Liquidating Trustee for<br>*Attorney for Plaintiff* the New Meatco Liquidating Trust | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>NEW MEATCO PROVISIONS, LLC,<br><br><div align=right>Debtor(s).</div> | CASE NO.: 2:13-bk-22155-DS<br><br>CHAPTER: 11<br><br>ADVERSARY NUMBER: 2:15-ap-01170-DS |
|---|---|
| HOWARD GROBSTEIN, LIQUIDATING TRUSTEE FOR THE NEW MEATCO LIQUIDATING TRUST,<br><div align=right>Plaintiff(s)</div>Versus<br>MORAD HAROUNI, an individual; THE AVISAR FAMILY TRUST, by and through its trustees, EYTAN AVISAR, an individual, and SUSAN AVISAR, an individual and DOES 1 through 10, inclusive,<br><div align=right>Defendant(s)</div> | **FIRST AMENDED**<br><br>**SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** |

First Amended

TO THE DEFENDANT: A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page. The deadline to file and serve a written response is _____. If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| **Hearing Date:** _____<br>**Time:** _____<br>**Courtroom:** 1339 | **Place:**<br>☑ 255 East Temple Street, Los Angeles, CA 90012<br>☐ 3420 Twelfth Street, Riverside, CA 92501<br>☐ 411 West Fourth Street, Santa Ana, CA 92701<br>☐ 1415 State Street, Santa Barbara, CA 93101<br>☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 |
|---|---|

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2012*                Page 1                **F 7004-1.SUMMONS.ADV.PROC**

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court-approved joint status report form is available on the court's website (LBR form F 7016-1.1) with an attachment for additional parties if necessary (LBR form F 7016-1.1a). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

                                        **KATHLEEN J. CAMPBELL**
                                        **CLERK OF COURT**


Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____



                              By: _____
                                           Deputy Clerk

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2012*                          Page 2                          **F 7004-1.SUMMONS.ADV.PROC**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:


A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____     _____
*Date*              *Printed Name*                                    *Signature*

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2012*                              Page 3                     **F 7004-1.SUMMONS.ADV.PROC**